✓ FILED
___ LODGED
___ RECEIVED

**March 4, 2005**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>DOUG A. LEE and LISA A. LEE,<br><br>Debtors. | No. 04-40532 |
| DOUG A. LEE and LISA A. LEE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF LABOR & INDUSTRIES, CONTRACTOR REGISTRATION SECTION,<br><br>Defendant. | Adversary No. 05-04002<br><br>**MEMORANDUM DECISION** |

This case came before the Court on February 10, 2005, on cross motions for summary judgment filed by the State of Washington, Department of Labor and Industries, Contractor Registration Section (State), and by Doug and Lisa Lee (Debtors). Based on the arguments presented and pleadings submitted, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The facts are not in dispute. Doug Lee (Debtor) was an officer and shareholder in Pacific Tech Drywall, Inc. (Pacific Tech), that registered with the state contractor registration section, as required by RCW 18.27.020, effective March 18, 1991. On January

MEMORANDUM DECISION - 1

14, 2004, in Pierce County Superior Court, Gypsum Wallboard Supply obtained a judgment against Pacific Tech in the amount of $43,646.01. On February 13, 2004, in King County Superior Court, Building Specialties also obtained a judgment against Pacific Tech in the amount of $24,350.36. The Debtors were personally liable for both judgments. On February 13, 2004, the State suspended Pacific Tech's registration pursuant to RCW 18.27.040, because the State determined that a final judgment impaired the liability of the security deposit that Pacific Tech previously had filed in lieu of a surety bond. On February 18, 2004, $12,000 was paid to Gypsum Wallboard Supply, leaving $31,646.01 still owing. Neither judgment has been satisfied through payment, court approved settlement, discharge in bankruptcy, or assignment under RCW 19.72.070.

On January 22, 2004, the Debtors filed bankruptcy under Chapter 7, Title 11. The Debtors listed on their Schedule F the debts owing Building Specialties and Gypsum Wallboard Supply. These debts were discharged on April 28, 2004.

On November 24, 2004, the Debtor applied for a new specialty contractor license with the State, at which time he paid a $106.50 fee and provided a copy of his new surety bond issued by Accredited Surety and Casualty Company. The State denied the application pursuant to RCW 18.27.030(3)(a)(ii), because of the two outstanding judgments owed by the Debtor's former and now defunct business, Pacific Tech.

On January 4, 2005, the Debtors filed a Complaint for Declaratory and Injunctive Relief against the State for violations of the protective provisions of 11 U.S.C. § 525 due to the State's refusal to issue the Debtor a new contractor's license. On January 27, 2005, the Court denied the Debtors' motion for injunction relief. Both parties thereafter filed for summary judgment.

## CONCLUSIONS OF LAW AND DISCUSSION

The party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct.

MEMORANDUM DECISION - 2

2548 (1986). All inferences drawn from the evidence presented must be drawn in favor of the party opposing summary judgment, and all evidence must be viewed in the light most favorable to that party. Summary judgment should be granted if, after taking all reasonable inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).

The issue presented to this Court is whether RCW 18.27.030(3)(a)(ii) violates the anti-discrimination provision of the U.S. Bankruptcy Code (Code) contained in 11 U.S.C. § 525(a). The effect of this state statute on a bankrupt contractor appears to be an issue of first impression in Washington State. RCW 18.27.030(3)(a)(ii) provides as follows:

> (3)(a) The department shall deny an application for registration if: . . . (ii) the applicant was a principal or officer of a partnership, corporation, or other entity that either has an unsatisfied final judgment against it in an action that was incurred for work performed subject to this chapter or owes the department money for penalties assessed or fees due under this chapter as a result of a final judgment . . . .

An "unsatisfied final judgment" is defined as "a judgment that has not been satisfied either through payment, court approved settlement, discharge in bankruptcy, or assignment under RCW 19.72.070." RCW 18.27.010(11). There is no dispute that the language of RCW 18.27.030(3)(a)(ii) prohibits the State from issuing the Debtor a new contractor's license because (1) he was an officer of Pacific Tech, and (2) Pacific Tech has unsatisfied final judgments against it for actions that were incurred for work subject to RCW 18.27.

11 U.S.C. § 525(a), provides, in pertinent part, that "a governmental unit may not deny . . . a license . . . to . . . a person that is or has been a debtor under this title . . . solely because such bankrupt or debtor . . . has not paid a debt that is dischargeable in the case under this title." The State argues that based on the language of 11 U.S.C. § 525(a) and RCW 18.27.030, the Code's anti-discrimination provision does not apply since the Debtor is not being denied a new license due to <u>his</u> pre-petition debts, which the State acknowledges were discharged, but rather due to the debts of Pacific Tech. Specifically,

MEMORANDUM DECISION - 3

the State argues that 11 U.S.C. § 525 is not implicated because (1) Pacific Tech has not been a debtor under the Code, and (2) Pacific Tech did not receive a discharge of its debts. Thus, according to the State, the denial of the Debtor's license pursuant to RCW 18.27.030(3)(a)(ii) due to the unsatisfied Pacific Tech judgments does not violate 11 U.S.C. § 525(a).

The State further argues that the legislative history of RCW 18.27.030(3)(a)(ii) strongly supports the effect of this statute. Under the prior version of RCW 18.27.030, a corporate officer could receive a discharge of his or her personal liability without satisfying the corporate debts, form a new corporation, and then once again accrue unpaid final judgments to suppliers, homeowners, etc. The 2001 amendment to RCW 18.27.030 was designed to protect the public from unscrupulous or inadequately capitalized contractors. Consequently, under the current version of RCW 18.27.030(3)(a)(ii), unless both the officer contractor and the corporation receive a discharge or otherwise satisfy all outstanding judgments, the contractor will never receive a new license.

In opposition to the State, and in support of their motion for summary judgment, the Debtors argue that RCW 18.27.030(3)(a)(ii) violates the Supremacy Clause of the U.S. Constitution. Relying on the seminal case of Perez v. Campbell, 402 U.S. 637, 91 S. Ct. 1704 (1971),[1] they contend that RCW 18.27.030(3)(a)(ii) is contrary to the anti-discrimination provision contained in 11 U.S.C. § 525(a). The Debtors argue that in applying RCW 18.27.030(3)(a)(ii), the State is, in effect, requiring the Debtor to pay the debts that he discharged and that were owed by a co-obligor, Pacific Tech. According to the Debtors, RCW 18.27.030 attempts to carve out an exception to 11 U.S.C. § 525, and in doing so violates the fresh start policy of the Code.

The Debtors also argue that RCW 18.27.030 creates a "guilt by association" defense for corporate contractors and discriminates against contractors who have operated

---

[1] 11 U.S.C. § 525(a) is the codification of the Supreme Court's holding in Perez.

MEMORANDUM DECISION - 4

as officers of corporations. For example, while RCW 18.27.030 prevents a contractor who was an officer of a corporation from receiving a new license unless the corporation's debts are satisfied, the statute allows a new license to a contractor who operated as a sole proprietorship with unsatisfied judgments.[2] Accordingly, RCW 18.27.030 does not penalize a sole proprietor for failing to pay his or her business debts, but does penalize an officer of a corporation who has unpaid debts against the corporation, whether or not the officer had an ownership interest in the corporation, caused the liability or was even aware that an unpaid judgment existed.

The Supremacy Clause, U.S. Const., art. VI, cl. 2,[3] "invalidates state laws that 'interfere with, or are contrary to,' federal law." Baker & Drake, Inc. v. Pub. Serv. Comm'n (In re Baker & Drake, Inc.), 35 F.3d 1348, 1352 (9th Cir. 1994) (quoting Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 712, 105 S. Ct. 2371 (1985)). Under the Supremacy Clause, state law is preempted to the extent it conflicts with federal law. Baker & Drake, 35 F.3d at 1353. To determine whether RCW 18.27.030(3)(a)(ii) interferes with or is contrary to 11 U.S.C. § 525(a) in this case, and therefore preempted by 11 U.S.C. § 525(a), the Court must first ascertain the intent and sweep of the statutes. Perez, 402 U.S. at 644; Baker & Drake, 35 F.3d at 1352.

One of the primary purposes of the Code is to give debtors "'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of

---

[2] RCW 18.27.030(3)(a)(i) prohibits the granting of a contractor license to an applicant who performed work "as a sole proprietor, partnership, corporation, or other entity and the department has notice that the applicant has an unsatisfied final judgment against him or her." Unlike RCW 18.27.030(3)(a)(ii),the sole proprietor statute makes no reference to unsatisfied judgments against the entity.

[3] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

MEMORANDUM DECISION - 5

pre-existing debt.'" Perez, 402 U.S. at 648 (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695 (1934)). 11 U.S.C. § 525(a), specifically, "is designed to prevent governmental units from frustrating the fresh start policy of the Code by discriminating against persons who have been debtors under the Code." 4 L. King, Collier on Bankruptcy, ¶ 525.02, p. 525-4 (15th ed. rev. 2004).

The legislative history of RCW 18.27.030(3)(a)(ii) states that consumer complaints against building contractors are in the top ten of all complaints received by the State Attorney General's Office. The history also indicates that one of the primary purposes of RCW 18.27.030 is to protect the public from corporate officers who discharge their personal liability for debts without satisfying the corporate debts, form a new corporation, and then accrue more corporate debt to homeowners, suppliers, etc.

The Court must next determine whether RCW 18.27.030(3)(a)(ii) is in conflict with 11 U.S.C. § 525(a). Such a conflict occurs when the challenged state statute "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Perez, 402 U.S. at 649 (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399 (1941)); Baker & Drake, 35 F.3d at 1353 (quoting Hillsborough County, 471 U.S. at 713). A state statute that conflicts with a federal statute is preempted, and thereby rendered invalid, to the extent it conflicts with the federal statute. Perez, 402 U.S. at 652; Baker & Drake, 35 F.3d at 1353. In the context of bankruptcy law, "federal bankruptcy preemption is more likely (1) where a state statute facially or purposefully carves an exception out of the Bankruptcy Code, or (2) where a state statute is concerned with economic regulation rather than with protecting the public health and safety." Baker & Drake, 34 F.3d at 1353.

In this case, RCW 18.27.030(3)(a)(ii) appears to fall within both criteria that are likely to result in federal bankruptcy preemption. First, the legislative history indicates that RCW 18.27.030(3)(a)(ii) was amended to circumvent the effects of, and carve out an

MEMORANDUM DECISION - 6

exception to, the discharge in bankruptcy and the anti-discrimination provision of 11 U.S.C. § 525. The State acknowledges this purpose in its summary judgment brief when it states:

> Clearly the Legislature recognized the effects of a discharge under the Bankruptcy Code when drafting RCW 18.27.030(3). The Legislature also clearly understood that the protection offered by section 525 cannot be stretched to cover a person who was not a debtor or to cover non-dischargeable debts—otherwise there would have been no reason to revise RCW 18.27.030 in 2001. (p. 7, line 2-7)

Second, RCW 18.27.030(3)(a)(ii) appears to be concerned with the economic regulation, i.e., protecting innocent suppliers, homeowners, etc., from unsatisfied judgments, rather than with protecting public health and safety. Even though the State asserts that it has an apparent regulatory purpose for the amended RCW 18.27.030, under the ruling in FCC v. Nextwave Pers. Communications, Inc., 537 U.S. 293, 301-302, 123 S. Ct. 832 (2003), this is irrelevant for purposes of determining whether 11 U.S.C. § 525 has been violated. Cf. Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494, 507, 106 S. Ct. 755 (1986) (where 11 U.S.C. § 554(a) authorized the debtor to abandon a toxic waste site as a cost-shaving part of its reorganization plan, but New Jersey's environmental regulations directly prohibited this, the Supreme Court held that the Bankruptcy Code did not preempt a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards).

Under the test enunciated in Hines, and utilized in Perez, RCW 18.27.030(3)(a)(ii) frustrates the full effectiveness of the anti-discrimination provision contained in 11 U.S.C. § 525(a) and the Code's fresh start policy. In this case, prior to filing bankruptcy, the Debtor, as the guarantor or co-signor for Pacific Tech, was financially liable for the judgment debts of Pacific Tech. The Debtors, however, filed bankruptcy, listed in their bankruptcy schedules the two supplier judgments for which both they and Pacific Tech were liable, and obtained a discharge of these debts. The discharge relieved the Debtors of any financial liability for the judgment debts against Pacific Tech, and thereby gave them a fresh start. Yet RCW 18.27.030(3)(a)(ii) has the effect of, and is designed to, make the

MEMORANDUM DECISION - 7

Debtors financially liable for judgment debts that remain unsatisfied by Pacific Tech, and for which the Debtors are no longer liable. Under this statute, the only way for the Debtor to ever obtain a contractor license and continue in his chosen profession is to pay every debt of Pacific Tech. This is not only contrary to the Code's fresh start policy, but also the general principle that shareholders and officers of a corporation are not generally liable for corporate debts.

The State acknowledged at the hearing that payment of these debts by the Debtor or a discharge by Pacific Tech were the only options available to the Debtor in order to obtain a contractor's license in the state. Discharge of the debts by Pacific Tech, however, is not a realistic option. Pacific Tech is insolvent, and the Debtor could not, and should not, be required to attempt to confirm a costly Plan of Reorganization in order for Pacific Tech to receive a discharge under 11 U.S.C. § 1141(d), solely to satisfy the requirements of RCW 18.27.030.

Payment of all of the corporate debts, in many circumstances, could also prove to be impossible. For example, a minor officer in a national or international construction corporation that becomes insolvent would be required to pay all of the liabilities of that corporation before he or she could register as a contractor in this state. These unpaid debts could exceed hundreds of millions of dollars and would be a condition precedent to resuming his or her chosen occupation. Accordingly, the requirements of RCW 18.27.030(3)(a)(ii) frustrate the full effectiveness of the fresh start policy of the Code and the anti-discrimination provision contained in 11 U.S.C. § 525(a).

The Court concludes that under the facts of this case, RCW 18.27.030(3)(a)(ii) is in conflict with 11 U.S.C. § 525(a), and is therefore preempted by 11 U.S.C. § 525(a) to the extent of the conflict. This holding is specifically limited to those instances where a contractor, who is also an officer of a corporation, is a co-obligor on an unsatisfied corporate judgment that has been discharged by the contractor in bankruptcy. This

MEMORANDUM DECISION - 8

decision does not address whether the RCW 18.27.030(3)(a)(ii) is entirely preempted by 11 U.S.C. § 525.

DATED: March 4, 2005

Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 9